1

2

3                  UNITED STATES DISTRICT COURT

4                 NORTHERN DISTRICT OF CALIFORNIA

5

6  DAVE DRILLING ENVIRONMENTAL          Case No.  14-cv-02851-MEJ
   ENGINEERING, INC.,

7              Plaintiff,               ORDER FOR REASSIGNMENT WITH
                                        REPORT & RECOMMENDATION RE:
8       v.                              MOTION FOR DEFAULT JUDGMENT

9  MARGARET THERSIA GAMBLIN,            Re: Dkt. No. 26

10             Defendant.

11

12                          I.  INTRODUCTION

13        This is a civil action pursuant to section 107(a) of the Comprehensive Environmental

14  Response, Compensation, and Liability Act, as amended ("CERCLA"), 42 U.S.C. §9607(a).

15  Plaintiff Dave Drilling Environmental Engineering, Inc. ("Plaintiff") seeks costs incurred for

16  response actions taken in connection with the release of hazardous substances at 910 Newbridge in

17  East Palo Alto, California ("the Property").  Pending before the Court is Plaintiff's Motion for

18  Default Judgment.  Dkt. No 26.  In its motion, Plaintiff requests that the Court enter an order

19  granting default judgment on its claims against Defendant Margaret Thersia Gamblin

20  ("Defendant"), awarding $210,000 in general damages under CERCLA.  No response has been

21  received by Defendant.  Because the undersigned finds this matter suitable for disposition without

22  oral argument, the Court VACATES the December 4, 2014 hearing.  *See* Fed. R. Civ. P. 78(b);

23  Civ. L.R. 7-(1)(b).

24        After carefully reviewing the motion and controlling authorities, the undersigned issues

25  this Report and Recommendation.  The undersigned RECOMMENDS that the District Court

26  GRANT Plaintiff's motion for the reasons set forth below.  Further, because no consent to

27  magistrate judge jurisdiction has been filed by Defendant, the Court ORDERS the Clerk of Court

28  to REASSIGN this case to a district court judge.

United States District Court
Northern District of California

United States District Court
Northern District of California

## II. BACKGROUND

Plaintiff is an environmental consulting firm.  Compl. ¶ 4, Dkt. No. 4.  Defendant, along with Lee A. Gamblin,[1] operated Kitty Cleaners, a dry cleaning company located at the Property, from 1986 through 2010.  *Id.* ¶¶ 5-6, 8.  The Property is owned by Mohammed Karwash.  *Id.* ¶ 5. During that time, the Gamblins had business insurance coverage with Fireman's Fund Insurance Company ("Fireman's").  *Id.* ¶ 8.  Plaintiff claims that this insurance plan provided protection for any damages to the Property resulting from Kitty Cleaners' operation.  *Id.*

As part of its operations, Kitty Cleaners used a number of chemicals for the cleaning of clothing, including perchloroethylene, tetrachloroethene, and a number of other solvents.  *Id.* ¶ 9. In June 2006, the California Regional Water Quality Control Board conducted an assessment of the Property and detected the presence of high levels of tetrachloroethene in its soil.  *Id.* ¶ 10.  Mr. Karwash and the Gamblins were informed about the contamination and were required to remediate it by arranging for a removal action to stabilize the situation at the Property and prevent any further release of hazardous substances into the environment.  *Id.*  In order to remediate the situation, Mr. Karwash contracted with Plaintiff.  *Id.*  The estimated total cost for the cleanup was $407,846.66.  Vergara Decl., Ex. B, Dkt. No. 27.

As part of the remedial action, Plaintiff used a Fenton's Reaction process vis in situ-injection.  Compl. ¶ 11.  A total of eight injection points ranging in depths from one to five feet below grade and spaced at approximately three-foot intervals were installed at the site.  *Id.*  A total of 257 cubic yards of soils were treated as part of the remedial action.  *Id.*  Plaintiff completed its removal action on September 15, 2011, at a cost of approximately $352,000.  Vergara Decl., Ex. C.  Of that amount, Plaintiff was paid $130,000 by Mr. Karwash.  Vergara Decl. ¶ 13.  Plaintiff maintains that $210,000 remains due.[2]

Following completion of the removal action, Plaintiff started settlement talks with Defendant through her insurer, Fireman's.  Compl. ¶ 12.  On July 3, 2012, Fireman's informed

---

[1] According to Plaintiff, Mr. Gamblin passed away in October 2009.  *Id.* ¶ 6.
[2] With costs totaling $352,000 and payment of $130,000, it would appear that $222,000 was unpaid.  Plaintiff does not explain why it seeks $210,000, but as it is lower than the costs, the Court accepts this amount as the remaining balance.

Mr. Karwash and Plaintiff about its decision to deny payment of any claim on the insurance policy, claiming that Defendant's policy did not provide coverage for the costs related to the environmental cleanup work.  *Id.*

Plaintiff states that the Gamblins filed for Bankruptcy in or around September 2009, and that they were discharged pursuant to the bankruptcy proceedings.  *Id.* ¶ 13.  On June 14, 2011, pursuant to California Civil Code section 954, Mr. Karwash, in his capacity as owner of the Property, assigned to Plaintiff all claims he would have against Defendant relating to the Property.  *Id.* ¶ 14.  Based on this information, Plaintiff filed the present action to determine Defendant's liability in her capacity as a bankruptcy debtor in order to collect any damages relating to this action from Fireman's.  *Id.*

On June 20, 2014, Plaintiff filed its Complaint, alleging four causes of action: (1) violation of CERCLA, 42 U.S.C. § 9607(a); (2) nuisance; (3) trespass to property; and (4) declaratory relief establishing that Defendant is responsible for the contamination at the Property and responsible for all costs expended to ensure the proper cleanup of the Property.  As Defendant failed to respond to the Complaint or otherwise appear in this case, the Clerk of Court entered default against her on August 20, 2014.  Dkt. No. 11.  Plaintiff filed the present motion on October 20, 2014.

## III.  DISCUSSION

### A.    Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case.  *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### 1.   Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A federal court may dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction over the action.  *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

United States District Court
Northern District of California

1    Here, the Court has subject matter jurisdiction over this action pursuant to sections 107(a)

2    and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a)(2) and 9613(b), which provide that the United

3    States District Court shall have the exclusive jurisdiction over all controversies arising under

4    CERCLA, and under 28 U.S.C. § 1331, which provides that the District Court will have

5    jurisdiction over all civil actions arising under the constitution, laws, and treaties of the United

6    States.

7          2.   Personal Jurisdiction

8          To enter default judgment, the Court must have a basis for the exercise of personal

9    jurisdiction over the defendants in default.  *Tuli*, 172 F.3d at 712; *see also King v. Russell*, 963

10   F.2d 1301, 1306 (9th Cir. 1992).  Traditional bases for conferring a court with personal

11   jurisdiction include a defendant's consent to jurisdiction, personal service of the defendant within

12   the forum state, or a defendant's citizenship or domicile in the forum state.  *J. McIntyre Mach.,*

13   *Ltd. v. Nicastro*, 131 S.Ct. 2780, 2787 (2011).  Here, the Court has personal jurisdiction over

14   Defendant as she was a resident of Santa Clara County, California at the time Plaintiff commenced

15   suit.  Compl. ¶ 5.

16         3.   Service of Process

17         Additionally, the Court must "assess the adequacy of the service of process on the party

18   against whom default is requested."  *Bank of the W. v. RMA Lumber Inc.*, 2008 WL 2474650, at

19   *2 (N.D. Cal. June 17, 2008).  "Without a proper basis for jurisdiction, or in the absence of proper

20   service of process, the district court has no power to render any judgment against the defendant's

21   person or property unless the defendant has consented to jurisdiction or waived the lack of

22   process."  *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

23         Under Federal Ru1e of Civil Procedure ("Rule") 4(e)(2)(B), an individual other than a

24   minor, an incompetent person, or a person whose waiver has been filed, may be served in a

25   judicial district of the United States by leaving a copy of the summons and complaint at the

26   "individual's dwelling or usual place or abode with someone of suitable age and discretion who

27   resides there."  Here, according to the proof of service filed in this case, on Ju1y 13, 2014, Uriel

28   Carmosa, a licensed process server, served the summons and complaint at Defendant's residence

United States District Court
Northern District of California

4

by leaving the summons and complaint with a co-occupant of Defendant who identified himself as being her son and who was over 40 years of age.  Dkt. No. 7.  On the next day, a copy of the summons and complaint was mailed to Defendant's residence.  *Id.*  This procedure was in conformance with Rule 4(e)(2)(B), and therefore, Defendant was properly served with process.

**B.      Legal Standard – Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case.  "The district court's decision whether to enter default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for courts to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

**C.      Application to the Case at Bar**

Applying the foregoing *Eitel* factors to the case at bar, the undersigned finds that default judgment is warranted in favor of Plaintiff.

1. The Possibility of Prejudice to Plaintiff

The first factor that the Court considers in determining whether to grant a default judgment is the possibility of prejudice to Plaintiff if a default judgment is not entered.  *Eitel*, 782 F.2d at 1471-72.  Courts have held that prejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy.  *See Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916 (C.D. Cal. 2010) (concluding that the plaintiff would suffer prejudice if default judgment was not entered where the plaintiff had only received partial payment owed under a contract).

United States District Court
Northern District of California

1    Here, as alleged in the Complaint, Plaintiff completed its removal action at a response cost

2    of approximately $352,000.  Of that amount, Plaintiff was paid $130,000 by Mr. Karwash.  Thus,

3    it appears that Defendant is liable for remaining unpaid balance, of which Plaintiff seeks

4    $210,000.  Absent a default judgment, there is a likelihood of prejudice to Plaintiffs because it

5    would be at a considerable financial loss unless, and denial of Plaintiff's motion would likely

6    leave it without a remedy.  *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D.

7    Cal. 2002).  Therefore, the undersigned finds that this factor weighs in favor of granting default

8    judgment.

9        2.    Substantive Claims and the Sufficiency of the Complaint

10   The second and third *Eitel* factors require the Court to look at the merits of the substantive

11   claims and the sufficiency of the allegations in the Complaint.  *Eitel*, 782 F.2d at 1471-72.

12   In order for a private party to recover cleanup costs under 42 U.S.C. § 9607(a), the plaintiff

13   must make a prima facie showing that (1) the property at issue is a "facility" as defined in 42

14   U.S.C. § 9601(9); (2) a "release" or "threatened release" of a "hazardous substance" has occurred;

15   (3) the "release" or "threatened release" has caused the plaintiff to incur response costs that were

16   "necessary" and "consistent with the [National Contingency Plan]"; and (4) the defendants are in

17   one of four classes of persons subject to liability under § 9607(a).  *Carson Harbor Vill., Ltd. v.*

18   *Cnty. of Los Angeles*, 433 F.3d 1260, 1265 (9th Cir. 2006).

19   First, the Property is a facility as defined by CERCLA.  42 U.S.C. § 9601(9) (defining a

20   facility as "any site or area where a hazardous substance has been deposited, stored, disposed of,

21   or placed, or otherwise come to be located").  Courts have interpreted the term facility broadly; "in

22   order to show that an area is a facility, the plaintiff need only show that a hazardous substance

23   under CERCLA is placed there or has otherwise come to be located there." *3550 Stevens Creek*

24   *Assocs. v. Barclays Bank of Ca.*, 915 F.2d 1355, 1360 n.10 (9th Cir. 1990) (internal citations and

25   quotation marks omitted) (collecting cases).

26   Second, there was a release of a hazardous substance.  A "release" is defined as "any

27   spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching,

28   dumping, or disposing into the environment." 42 U.S.C. § 9601(22).  As alleged in the Complaint,

1    the California Regional Water District Quality Control Board conducted an assessment of the

2    Property and detected the presence of high levels of tetrachloroethene in its soil.

3         Third, Plaintiff must show its remedial action costs were necessary and consistent with the

4    National Contingency Plan ("NCP").  42 U.S.C. § 9607(a)(3)(B); *Carson Harbor*, 433 F.3d at

5    1265 ("Private parties have the burden of proving that cleanup costs associated with remedial

6    actions are consistent with the National Contingency Plan to recover those cleanup costs under

7    CERCLA.").  Costs are "necessary" under the NCP when the remedy is cost-effective and the

8    response cost is tied to the actual cleanup of hazardous releases.  40 C.F.R. § 300.430(f)(1)(ii)(D);

9    *Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005) ("[R]ecognized costs cannot be

10   deemed 'necessary' to the containment and cleanup of hazardous releases absent some nexus

11   between the alleged response cost and an actual effort to respond to environmental

12   contamination.") (collecting cases).  A remedial action is "cost-effective if its costs are

13   proportional to its overall effectiveness."  40 C.F.R. § 300.430(f) (1)(ii)(D).  Overall effectiveness

14   is measured by evaluating the "long-term effectiveness and permanence, reduction of toxicity,

15   mobility, or volume through treatment, and short-term effectiveness" of the remedy.  *Id.*  "By

16   requiring a cost-effective response, the [NCP] does not mandate the cheapest possible response.

17   Instead, courts have held that more expensive options were cost-effective when the added expense

18   bought additional environmental benefit."  *AmeriPride Servs., Inc. v. Valley Indus. Serv., Inc.*,

19   2011 WL 1833179, at *16 (E.D. Cal. May 12, 2011) (citing *Franklin Cnty. Convention Facilities*

20   *Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 546 (6th Cir. 2001)).

21        Here, as described in the Complaint, Plaintiff's remedial action consisted of a Fenton's

22   Reaction process vis in situ-injection, with a total of 257 cubic yards of soil.  This action was

23   required to stabilize the situation at the Property and prevent any further release of hazardous

24   substances to the environment or any endangerment to the public health.  Compl. ¶ 10.  Further,

25   although the estimated total cost for the cleanup was $407,846.66, Plaintiff completed its removal

26   action at a response cost of approximately $352,000, a savings of more than $50,000.

27   Accordingly, Plaintiff has shown that these costs were necessary and that its remedial action was

28   cost effective.  *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 92 (2d Cir. 2000) (explaining a

United States District Court
Northern District of California

1    necessary cost of response must be incurred in remedying a site); *Amoco Oil Co. v. Borden, Inc.*,

2    889 F.2d 664, 669-70 (5th Cir. 1989) (explaining that "[t]o justifiably incur response costs, one

3    necessarily must have acted to contain a release threatening the public health or the

4    environment.").

5            Finally, Defendant must be subject to liability.  CERCLA imposes strict liability for

6    environmental contamination on "any person who at the time of disposal of any hazardous

7    substance owned or operated any facility at which the hazardous substances were disposed of."  42

8    U.S.C. § 9607(a); *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 609 (2009).

9    The term "disposal" means "the discharge, deposit, injection, dumping, spilling, leaking, or

10   placing of any solid waste or hazardous waste into or on any land or water so that such solid waste

11   or hazardous waste or any constituent thereof may enter the environment. . . ."  42. U.S.C. § 6903.

12   Under CERCLA, potentially responsible parties are liable for "necessary costs of response

13   incurred by any other person consistent with the [NCP]."  42 U.S.C. § 9607(a)(4)(B).  CERCLA

14   liability can be found solely on circumstantial evidence.  *Franklin Cnty.*, 240 F.3d at 547.

15           Here, Plaintiff's Complaint establishes that Defendant, as owner of Kitty Cleaners, used a

16   number of chemicals for the cleaning of clothing, including perchloroethylene, tetrachloroethene,

17   and that the California Regional Water Quality Control Board detected the presence of high levels

18   of tetrachloroethene in soil at the Property.  Thus, based on the record before the Court, the

19   undersigned finds that Defendant is subject to liability.  Accordingly, these factors weigh in

20   Plaintiff's favor.

21           3.    The Sum of Money at Stake in the Action

22           The fourth *Eitel* factor addresses the amount of money at stake in relation to the

23   seriousness of the defendant's conduct.  *PepsiCo*, 238 F. Supp. 2d at 1176.  When the amount at

24   stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is

25   disfavored.  *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the

26   plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings).

27           Here, Plaintiff has submitted evidence that it is still owed at least $210,000.  This amount

28   represents the balance for work and costs incurred by Plaintiff in its performance of the remedial

8

action.  There is no evidence before the Court showing that this balance is in dispute.

Accordingly, the undersigned finds this factor weighs in Plaintiff's favor.

### 4.   The Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the

material facts surrounding the case.  *Eitel*, 782 F.2d at 1471-72.  Upon entry of default, the

defendant is "deemed to have admitted all well-pleaded factual allegations" in the complaint.

*DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)).

Here, as she was served on July 13, 2014, Defendant was given ample opportunity to

respond to the Complaint and participate in the proceedings.  Plaintiff moved for default judgment

several months later, yet Defendant still failed to respond.  Accordingly, this factor also weighs in

favor of granting default judgment.

### 5.   Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether the defendant's failure to respond to the

Complaint was the result of excusable neglect.  *Eitel*, 782 F.2d at 1471-72.  Here, Plaintiff

properly served Defendant with the summons and Complaint, yet Defendant made no appearance

in this matter and failed to respond to the present motion.  There is nothing in the record

suggesting that this failure is based on excusable neglect.  *See Shanghai Automation Instr. Co. v.

Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable

neglect).  Thus, this factor supports default judgment.

### 6.   Policy Favoring Deciding a Case on its Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits

precludes entry of default judgment.  *Eitel*, 782 F.2d at 1472.  In *Eitel*, the Ninth Circuit

admonished that "[c]ases should be decided on their merits whenever reasonably possible."  *Id.*

However, courts have recognized that "the mere existence of [Rule 55(b) indicates that this

preference, standing alone, is not dispositive."  *PepsiCo*, 238 F. Supp. 2d at 1177 (internal

quotation and citation omitted).  Similarly, other courts have stated that default judgment is

appropriate when a defendant refuses to litigate a case.  *See, e.g., Bd. of Trs. v. RBS Wash. Blvd,

LLC*, 2010 WL 145097, at *4 (N.D. Cal. Jan. 8, 2010).  Here, Defendant made no effort to respond

to communication attempts by Plaintiff and in no way participated in the proceedings. As such, a decision on the merits would not be possible. In situations such as this, Rule 55(b) allows the court to grant default judgment. This final factor weighs in favor of granting the Motion.

7. Summary of the *Eitel* Factors

Based on the foregoing analysis, the undersigned finds that each of the *Eitel* factors weighs in favor of granting default judgment. Accordingly, the undersigned RECOMMENDS that the District Court **GRANT** Plaintiff's motion and enter default judgment against Defendant.

**D.     Relief  Sought**

After determining liability, the Court then calculates the amount of damages that should be awarded. *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1078 (C.D. Cal. 2012). This two-step process is proper because while for purposes of default judgment the Court generally accepts as true the factual allegations of the complaint, the Court need not do so regarding damages. *Id.*

As discussed above, the estimated total cost for the cleanup was $407,846.66, but Plaintiff completed its removal action at a response cost of approximately $352,000. Of that amount, Plaintiff was paid $130,000 by Mr. Karwash. Thus, it appears that Defendant is liable for remaining unpaid balance, which Plaintiff states is $210,000.

However, as stated in the Complaint, Defendant filed for Bankruptcy in 2009. At the same time, a discharge in bankruptcy does not apply to an action to recover from other entities which might be liable for the discharged debt. *Owaski. v. Jet Fla. Sys., Inc.*, 883 F.2d 970, 975 (11th Cir. 1989). Thus, an insurer who is derivatively liable for the indebtedness of the debtor may remain liable after confirmation of the bankruptcy plan and the debtor's discharge. *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 181 (7th Cir. 1994). As long as the debtor is exempted from any exposure to personal expense or liability resulting from the creditor's actions, the action will be permitted to proceed. 11 U.S.C. § 524(e) permits a creditor to bring and proceed in an action nominally directed against a discharged debtor for the sole purpose of proving liability on its part as a prerequisite to recovering from its insurer. *In re Beeney*, 142 B.R. 360, 363 (B.A.P. 9th Cir. 1992). Thus, so long as Plaintiff does not intend to enforce any judgment against Defendant or her

United States District Court
Northern District of California

10

1   property, the action is proper.  As stated in the complaint, Plaintiff brings this action for the

2   purpose of determining the liability of Defendant in her capacity as a bankruptcy debtor solely in

3   order to recover any damages from Fireman's in its capacity as Defendant's insurer.  Compl. ¶ 13.

4           Accordingly, the undersigned RECOMMENDS that the District Court **GRANT** Plaintiff's

5   request for a damages award in the amount of $210,000.

**IV.  CONCLUSION**

7           Based on the above analysis, the undersigned RECOMMENDS that the District Court

8   **GRANT** Plaintiff Dave Drilling Environmental Engineering, Inc.'s Motion for Default Judgment

9   and enter judgment against Defendant Margaret Thersia Gamblin.  The undersigned further

10  RECOMMENDS that the Court award Plaintiff damages in the amount of $210,000.

11          Plaintiff shall serve a copy of this Report & Recommendation upon Defendant.  Pursuant

12  to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file

13  objections to this Report and Recommendation 14 days after being served.

14          **IT IS SO RECOMMENDED.**

16  Dated: November 24, 2014

17  _____

18  MARIA-ELENA JAMES
    United States Magistrate Judge

*United States District Court*
*Northern District of California*