UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVE DRILING ENVIRONMENTAL ENGINEERING, INC., <br><br>Plaintiff, <br><br>v. <br><br>MARGARET THERSIA GAMBLIN, <br><br>Defendant. | Case No. 14-cv-02851-WHO <br><br>**ORDER DENYING MOTION TO DISMISS** <br><br>Re: Dkt. No. 52 |

I heard argument on October 14, 2015, concerning intervenor Fireman's Fund Insurance's (FFI) motion to dismiss plaintiff's First Amended Complaint (FAC) on the basis that the six year statute of limitations has run on plaintiff's claim under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA, 42 U.S.C. § 9607(a)). The procedural and factual background of this case has been fully explained in my prior Order (Docket No. 48) and is incorporated by reference. Finding that the claim is not time barred on its face, I DENY the motion to dismiss.

## LEGAL STANDARD

Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). "A statute of limitation defense may be raised by a motion to dismiss if the running of the limitation period is apparent on the face of the complaint." *Vaughan v. Grijalva*, 927 F.2d 476, 479 (9th Cir. 1991). A motion to dismiss based on the running of the statute of limitations may be granted "only if the assertions of the

complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & C*o., 614 F.2d 677, 682 (9th Cir. 1980).

## DISCUSSION

Under CERCLA, activities to clean up hazardous waste are characterized as "removal actions" or "remedial actions." Removal actions are interim actions to clean up or remove hazardous materials[1] and remedial actions are efforts to permanently remedy the presence of hazardous materials.[2] *See, e.g.*, *Cal. v. Neville Chem. C*o., 358 F.3d 661, 667 (9th Cir. 2004) ("That is, 'removal actions generally are immediate or interim responses, and remedial actions generally are permanent responses.'" (quoting *Geraghty & Miller, Inc. v. Conoco Inc.*, 234 F.3d 917, 926 (5th Cir. 2000))). A claim to recover damages for a removal action must be filed within 3 years after completion of the removal. 42 U.S.C. § 9613(g)(2)(A). A claim to recover damages for a remedial action must be filed within six years after initiation of physical on-site construction of the remedial action. *Id*., § 9613(g)(2)(B).

Plaintiff characterizes the work underlying its CERCLA claim as a remedial action covered by the six year statute of limitations. Opposition (Docket No. 56) at 2, 7. In its FAC, plaintiff

---

[1] A removal action is "the cleanup or removal of released hazardous substances from the environment, such actions as may be necessary taken in the event of the threat of release of hazardous substances into the environment, such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water supplies, temporary evacuation and housing of threatened individuals not otherwise provided for. . . ." 42 U.S.C. § 9601(23).

[2] A remedial action is one "consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. The term includes, but is not limited to, such actions at the location of the release as storage, confinement, perimeter protection using dikes, trenches, or ditches, clay cover, neutralization, cleanup of released hazardous substances and associated contaminated materials, recycling or reuse, diversion, destruction, segregation of reactive wastes, dredging or excavations, repair or replacement of leaking containers, collection of leachate and runoff, onsite treatment or incineration, provision of alternative water supplies, and any monitoring reasonably required to assure that such actions protect the public health and welfare and the environment. . . . [T]he term includes offsite transport and offsite storage, treatment, destruction, or secure disposition of hazardous substances and associated contaminated materials." 42 U.S.C. § 9601(24).

contends that the "remedial work" began in or around April 2009. FAC ¶ 13. But FFI argues that the statute of limitations has run because, contrary to plaintiff's current position, plaintiff initiated on-site construction of the remedial work in 2006 or 2007, not as late as April 2009.

FFI relies on following facts to support its argument:

(i) In a prior court hearing, plaintiff's CFO stated she could not recall the exact date "in 2007" when work at the site commenced (Dkt. 49 fn. 5);

(ii) invoices submitted to the Court by plaintiff show that work at the property dated back to April 20, 2007 (Dkt. 27-3 at 2);

(iii) in a FAC in the prior related action, plaintiff cited a San Mateo Health Department January 9, 2007 letter asking for "further work" related to the cleanup of the property (Case No. 13-3801, Dkt. 9 ¶ 9); and

(iv) a December 2007 "Revised Report of Soil and Groundwater Sampling," indicated work was ongoing at that time (Dkt. No 54-2).

Motion to Dismiss ("MTD," Dkt. No. 52) at 6.

With these examples, FFI assumes that work done to investigate the scope of the hazardous waste problem at the site and develop an adequate solution is the same as the "initiation of physical on-site construction of the remedial action." But plaintiff's CFO's comments are unspecific as to the type of "work" that may have taken place in 2007. The invoices from 2007, the report showing the soil and ground water sampling, and the communications between plaintiff and San Mateo County show only that plaintiff was involved in determining the scope of the hazardous waste problem and proposing a plan for its remediation or removal.[3] These documents do not show that plaintiff was working to permanently remediate the hazardous waste in 2007.[4]

FFI cites no authority to support its argument that work done to investigate the scope of a

---

[3] For example, the December 2007 report encompasses only drilling temporary wells and taking water and soil samples in order to determine the extent of contamination. The report does not decide what remedial action is necessary (although options are presented) and does not indicate any remedial activity occurred.

[4] FFI also relies on an invoice filed by plaintiff in this case indicating that injection wells were installed at the site in January 2009, not April 2009. Dkt. 27-3 at 6, 9. However, even if that work could be assumed to be remedial on this record, January 2009 falls within the six year statute of limitations.

hazardous waste problem and develop a remedy plan is the same as "initiation of physical on-site construction of the remedial action." Indeed, the Ninth Circuit has drawn significant distinctions between work done prior to and after the adoption of a final remedial action plan (RAP) governing a cleanup. *See Cal v. Neville Chem. Co.*, 358 F.3d 661, 667-669 (9th Cir. 2004). It may be that discovery will show that the work undertaken by plaintiff in 2007 and early 2008 was physical construction of a remedial plan, but that cannot be determined on this motion to dismiss based on the facts pled by plaintiff and those subject to judicial notice.

FFI also argues that this action is governed by the three year statute of limitations for a removal action and not the more generous remedial action statute of limitations because no final RAP was approved by the appropriate government authorities. MTD at 8-9.[5] FFI contends that under applicable statutes a RAP must have been subject to public scrutiny at a noticed public meeting and approved by a public body. MTD at 8 (citing Cal. Health & Safety Code §§ 25356.1 & 25358.7). Because one of FFI's attorneys declares that he could find no evidence in the public record that a RAP for the site had been discussed or approved, FFI asserts that the work at the site must not be "remedial." *Id*. at 9; Declaration of Paul A. Desrochers.

As an initial matter, it is not clear to me that in order for plaintiff's work at the site to be considered remedial plan a RAP had to be adopted and approved by a public body at a noticed public hearing. *See Cal. v. Neville Chem. Co.* 358 F.3d 661, 667 n.3 (noting that private cleanup actions may still have RAPs, despite lack of governmental oversight); *see also* Cal. Health & Safety Code § 25356.1(h)(3) (discussing waiver of certain remedial action plan requirements). But even so, the only evidence in the record that is properly subject to judicial notice is that there was a RAP in place for the work at issue as of August 2008 and an Amended Remedial Action Plan in place as of December 2008, which the California Regional Water Quality Control Board (RWQCB) knew of and relied on in closing the "site investigation and remedial actions" at the

---

[5] FFI contends that plaintiff cannot benefit from the three year statute of limitations for a removal action under 42 U.S.C. § 9613(g)(2)(B), because it did not file suit within three years of the completion of the removal work. Plaintiff does not dispute that this case was filed more than three years after the completion of the work at issue.

site. Plaintiff's Request for Judicial Notice, Dkt. 57-1.[6] Therefore, even if FFI is correct that public agency approval of a RAP was necessary for the work at issue to be considered remedial under CERCLA, further evidence may show that public agency approval was received. That FFI's attorney could not find such approval despite his search for it does not prove as a matter of law that it did not occur.

Finally, FFI argues in Reply that the work for which plaintiff seeks compensation cannot be considered remedial because it was not designed to permanently remediate the contamination but to simply "minimize and mitigate" it as a removal action. Reply (Dkt. No. 59) at 4-5. FFI relies solely on the October 30, 2009 closure letter from the RWQCB that plaintiff submitted for judicial notice. In its letter, the RWQCB found that the "remedial action" and "remedial program" proposed and carried out was implemented to "reduce" but not eliminate the level of PCE in the soil." The RWQCB also indicated that if the building at the site is demolished in the future, further testing should occur prior to redevelopment. Dkt. 57-1 at 6. These statements, FFI contends, show that the work was one for removal and not permanent remediation. However, the RWQCB itself referred to the work repeatedly as "remedial." Moreover, that future testing may be required does not prove as a matter of law that plaintiff's work cannot be considered remedial as that term is used in CERCLA.

In sum, plaintiff's CERCLA claim as pleaded is not time-barred.

## CONCLUSION

For the foregoing reasons, FFI's motion to dismiss is DENIED.

**IT IS SO ORDERED**.

Dated: October 19, 2015

WILLIAM H. ORRICK
United States District Judge

---

[6] Plaintiff requests that I take judicial notice of the closure letter from RWQCB regarding the site and the Case Summary, both available on the RWQCB website. Dkt. No. 57. FFI requests that I take judicial notice of a complaint filed in state court and a Report of Soil and Ground Water Sampling for the site accessible from the RQWCB's website. Dkt. No. 54. I grant the requests for judicial notice of these public records under Fed. R. Evid. 201(b).